354 A.2d 573
**COMMONWEALTH of Pennsylvania**
v.
**Donald Lakey REESE.**
**Appeal of Mark WILMORE.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1976.

Decided April 7, 1976.

Calvin S. Drayer, Jr., Asst. Public Defender, John P. Gregg, for appellant.

Milton O. Moss, Dist. Atty., William T. Nicholas, First Asst. Dist. Atty., Stewart J. Greenleaf, Asst. Dist. Atty., Chief, Appeals Div., Bert M. Goodman, Norristown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

### OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from the holding of appellant, Mark Wilmore, in direct criminal contempt of court for invok-

ing his Fifth Amendment right against self-incrimination at the trial of Donald Reese.

The facts surrounding this appeal are as follows. On August 20, 1972, Parnell Butler was found murdered in his cell at Graterford Prison. On October 24, 1972, appellant was called as a witness by the Commonwealth during the preliminary hearing for Donald Reese, who was accused of the murder of Butler. Appellant's testimony implicated Reese as the assailant, placed himself in the cell during the altercation which caused Butler's death, and implicated himself as a participant in the slaying. Appellant was cross-examined by Reese's attorney but he was not represented by counsel. On September 19, 1974, appellant was called as a witness at the trial of Reese for the murder of Butler. Appellant was sworn and testified that he had been "residing" at Graterford for the past two (2) years. Appellant then testified as follows:

"Q. (District Attorney)

Now, directing your attention to August the 20th, 1972, were you in Graterford at that time?

"A. (Wilmore)

Well, I'm not going to testify to this case here. You see I'm going to take the Fifth Amendment. I'm going to invoke the Fifth Amendment.

"Q. Directing your attention again to August the 20th, 1972, at approximately 6:30 A.M., did you have occasion to be in the cell of one Purnel [sic] Butler, Cell 97?

"A. I said I'm going to invoke the Fifth Amendment.

"THE COURT: Mr. Wilmore, I'm directing you to answer those questions.

"THE WITNESS: I don't care what you say. I'm not answering no questions.

"THE COURT: You understand that I can find you in contempt of Court.

"THE WITNESS: I don't care what you say. I ain't answering no questions.

"THE COURT: I will again order you to answer those two (2) questions.

"THE WITNESS: I'm not answering no more questions.

"THE COURT: All right, step down.

Now this 19th day of September, 1974, I hold you, Mark Wilmore, in contempt of Court. Your refusal to answer questions after you have been ordered to answer them under oath and in the presence of this Judge, being a direct contempt of Court, you are hereby held in contempt of Court."

Appellant's counsel then argued to the court below that he had advised his client to invoke his Fifth Amendment rights against self-incrimination. The argument was summarily dismissed and the court imposed the following sentence:

"And now this 19th day of September, 1974, the defendant being found in contempt of Court, and in direct contempt of this Court, the sentence of this Court is that you, Mark Wilmore, shall serve a sentence of six (6) months at the State Correctional Institution at Graterford, such sentence to commence at the expiration of the sentence you are now serving."

This appeal followed. Appellant argues that the court below erred in finding him guilty of direct criminal contempt for exercising his right against self-incrimination. We agree.

This court in *Snyder Appeal*, 398 Pa. 237, 242–243, 157 A.2d 207, 210 (1960), stated:

"The guarantee against self-incrimination is absolute. 'He cannot be compelled to give evidence against himself.' This does not refer to any particular place or at any particular time. He may not be *compelled*, under any circumstances, to testify against himself

where criminal prosecution is involved. The constitutional privilege is not like a coat which may be taken off and thrown away. It is as much a part of the accused as his skin and may not be stripped away by himself or others. It is an inviolable power accorded him in exchange for what he surrenders in being a member of the society of the Commonwealth. Of course, he may, if he so desires, testify against himself, but the constitutional privilege continues to remain with him, and the fact that he has willingly admitted circumstances adverse to his own interests can never be made the basis for *compelling* him to make *further* admissions. Even if an accused makes a hundred statements prior to trial he may still refuse to testify against himself at the trial. His constitutional privilege against self-incrimination is inalienable, inviolable and irrevocable." (Emphasis supplied.)

■ In the instant case, appellant clearly would have incriminated himself by placing himself at the scene of the murder at the exact time of the murder; therefore, in light of our decision in *Snyder*, appellant was entitled to invoke his Fifth Amendment privilege at Reese's trial.

■ Alternatively, the Commonwealth urges this court to abandon the *Snyder* rationale and adopt the waiver rule enunciated by the United States Court of Appeals for the District of Columbia in *Ellis v. United States*, 135 U.S.App.D.C. 35, 416 F.2d 791 (1969). The court in *Ellis* stated:

"We hold that where a non-indicted witness has waived his Fifth Amendment privilege by testifying before a grand jury voluntarily and with knowledge of his privilege, his waiver extends to a subsequent trial based on an indictment returned by the grand jury that heard his testimony. We repeat, for emphasis, that our holding does not apply when the witness is himself accused or under indictment. We also hold

that the witness is entitled to counsel, either his own or court appointed, and may object to any question that would require disclosure of new matter of substance.

"In our view this approach accommodates both the policies underlying the Fifth Amendment's privilege and the interest of obtaining full disclosure whenever possible in criminal trials." (Emphasis supplied.) At page 805.

The *Ellis* rationale is not applicable under the facts of the instant case, since appellant, prior to his testimony at the preliminary hearing, was neither represented by counsel nor was he informed by the district magistrate, the district attorney or defense counsel for Reese, of his Fifth Amendment rights; therefore, no knowing waiver of those rights can be inferred.

Judgment of sentence reversed.

EAGEN, J., concurs in the result.